UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| | |
|---|---|
| JAMES LEE HARRIS, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:06CV00027 ERW |
| ) | |
| LISA HENNEBERRY, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court upon Defendants Lisa Henneberry, Keith Friesz, and Richard Holtzclaw's Motion for Summary Judgment. [doc #34].

## **I. BACKGROUND**

Plaintiff James Lee Harris Jr. ("Plaintiff") brought this 42 U.S.C. § 1983 action against numerous officials of the Missouri Department of Corrections for alleged violations of his Eighth Amendment rights in response to events that occurred on December 28, 2005. On that day, Plaintiff was housed in Housing Unit 2, an administrative segregation unit, at the Missouri Department of Corrections at Moberly Correctional Center ("MCC") located in Moberly, Missouri.[1] Defendants Lisa Henneberry, Keith Friesz, and Richard Holtzclaw ("Defendants") were employed as Correctional Officers in Housing Unit 2 at the time of the incident. Defendants Henneberry and Friesz were responsible for maintaining security, supervising inmates in the

---

[1] The Court's statement of facts is taken from Defendants' Statement of Undisputed Material Facts. Because Plaintiff has not filed a response to Defendant's Motion for Summary Judgment, the Court is limited to the Defendants' Statement of Undisputed Material Facts, Defendants' exhibits, and the exhibits filed by Plaintiff in conjunction with his complaint.

1

housing units, and taking periodic counts of inmates. Defendant Holtzclaw was responsible for supervising lower level corrections officers like Defendants Henneberry and Friesz and generally maintaining safety and security in the corrections facility.

On December 28, 2005, Defendant Henneberry escorted Plaintiff back to his cell after recreation. At some point, the food service slot in Plaintiff's cell was opened. Defendant Henneberry carried a six ounce cup of coffee while she escorted another offender down the hallway. Plaintiff called out to Defendant Henneberry, and she hit the open food service slot as she turned to see what Plaintiff wanted. The impact caused her to spill some coffee on Plaintiff's cell door. An offender in the cell directly across the hall saw Plaintiff standing several feet away from the cell door when Defendant Henneberry spilled her coffee. Defendant Henneberry asked Plaintiff if any of the coffee had gotten on him, and Plaintiff said, "Don't sweat it." Defendant Henneberry apologized to Plaintiff. After Defendant Henneberry moved on, the offender across the hall saw Plaintiff wipe the coffee off his cell door with his shirt and state that he would get money from Defendant Henneberry. The parties dispute whether Plaintiff requested medical attention from Defendant Henneberry. Defendant Henneberry denies that Plaintiff requested medical treatment, but Plaintiff's medical records from December 29, 2005 indicate that he reported being denied medical care on December 28, 2005. It is unclear whether Plaintiff reported the incident on December 28, 2005.

Later on December 28, 2005, Defendant Holtzclaw was asked by his immediate supervisor, Lieutenant Brian Gremmel, to investigate the incident between Defendant Henneberry and Plaintiff. When Defendant Holtzclaw asked Plaintiff about the incident, Plaintiff showed Defendant Holtzclaw a shirt with a brown stain on it. Plaintiff was laughing throughout this

discussion, and he did not appear to be in pain or injured. Again, it is unclear whether Plaintiff requested medical attention from Defendant Holtzclaw.

Plaintiff received medical attention in relation to his left eye several times in the months following the December 28, 2005 incident[2]. On December 29, 2005, the sergeant in Housing Unit 2 asked Nurse Rhonda Meyer to see Plaintiff. Plaintiff reported having hot coffee thrown on him on December 28, 2007 and being denied medical attention. Nurse Meyer concluded that Plaintiff showed no signs of distress and that an examination of his face and upper chest showed no signs of reddened or blistered skin. Plaintiff testified that Meyer examined his eye, but she did not comment on his eye or vision in her report.

Plaintiff first complained about pain and swelling in his eye on January 12, 2006. Nurse Mary Mills reported that Plaintiff's left eye was bloodshot and swollen. Plaintiff denied any change in vison, and Nurse Mills reported that he had 20/20 vision. Nurse Mills referred Plaintiff to an eye doctor because the redness and swelling was not readily attributable to a foreign body. Doctor Christine Gavett examined Plaintiff's eye the same day. She diagnosed him with preseptal cellulitis and prescribed an antibiotic. On January 19, 2006, Doctor Gavett again examined Plaintiff. Plaintiff reported that his eye was feeling better, and Doctor Gavett observed that the infection was resolving.

Plaintiff again complained about his eye on February 1, 2006. On February 2, 2006, Nurse Amanda Scott examined his eye and referred him to the eye doctor. It is unclear whether Plaintiff saw a physician after that referral. On February 8, 2006, Plaintiff saw Nurse Andrea

---

[2] Unless otherwise indicated, information on Plaintiff's medical treatment is taken from Plaintiff's Complete Medical Record History.

3

Geisendorfer after complaining that a foreign object had landed in his left eye. Nurse Geisendorfer flushed Plaintiff's left eye, and the foreign object was removed. Plaintiff had 20/20 vision in both eyes on that day. On February 11, 2006, Plaintiff requested to see an eye doctor. On February 12, 2006, Nurse Scott examined Plaintiff's eye, observed no swelling or matting, and referred him to the doctor. On February 13, 2006, Plaintiff reported a vision problem. On February 14, 2006, Nurse Patricia DeJonge referred Plaintiff to an optometrist. Plaintiff had appointments scheduled with Doctor Gavett on February 17 and 23, 2006, but could not see her because prison officials were unable to escort him from the segregated housing unit. Plaintiff saw Nurse Judith Miller on April 29, 2006. Nurse Miller observed slight redness in the left eye, but no tissue swelling or drainage. She concluded that there was potential for an infection in the left eye.

Plaintiff also alleges that Defendant Friesz verbally threatened and harassed him. The parties dispute the extent and content of the interactions between Plaintiff and Defendant Friesz. In his Informal Resolution Request dated January 5, 2006, Plaintiff complained that Defendant Friesz came up to his cell door, asked whether Plaintiff had reported Defendant Henneberry, and said "[t]hat's low" when Plaintiff explained his reasons for reporting. In his deposition, Plaintiff stated that on December 30, 2005, Defendant Friesz said, "[w]ell, if I get word that you wrote her up, I'm going to make your stay in this housing unit very hard. I'm going to search your cell no matter what. I'm going to search your cell, and who knows what I'm going to come up on. A knife, drugs, or some type of contraband." Plaintiff also stated that Defendant Friesz made "little smart remarks" to him after he filed the grievance against Defendant Henneberry. Defendant Friesz states that his contact with Plaintiff was limited to routine inmate checks. He does not recall having any conversations with Plaintiff.

4

## II. PROCEDURAL HISTORY

Plaintiff filed this case against Defendants Henneberry, Friesz, and Holtzclaw in their personal and official capacities, as well as against Superintendent Tony Gammon and the Moberly Correctional Center, on April 26, 2006. The Court dismissed without prejudice all Counts against Moberly Correctional Center and dismissed with prejudice all Counts against the remaining defendants except for Plaintiff's Eighth Amendment claim against Defendants Henneberry, Friesz, and Holtzclaw in their personal capacities. Defendants subsequently filed the pending motion for summary judgment [doc #34]. Plaintiff has not responded to Defendants' Motion.

## III. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment only if all of the information before the court shows "there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Citrate*, 477 U.S. 317, 322 (1986). The United States Supreme Court has noted that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the federal rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327 (quoting Fed. R. Civ. P. 1). "By its terms, [Rule 56(c)(1)] provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one such that "a reasonable jury could return a verdict for the nonmoving party." *Id*. Further, if the

5

non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.

The initial burden of proof in a motion for summary judgment is placed on the moving party to establish the non-existence of any genuine issue of fact that is material to a judgment in its favor. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). Once this burden is discharged, if the record does in fact bear out that no genuine dispute exists, the burden then shifts to the non-moving party who must set forth affirmative evidence and specific facts showing there is a genuine dispute on that issue. *Anderson*, 477 U.S. at 249. When the burden shifts, the non-moving party may not rest on the allegations in its pleadings, but by affidavit and other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e); *Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 465 (8th Cir. 2002). To meet its burden, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In fact, the non-moving party must show there is sufficient evidence favoring the non-moving party which would enable a jury to return a verdict for it. *Anderson*, 477 U.S. at 249; *Celotex*, 477 U.S. at 324. "If the non-moving party fails to produce such evidence, summary judgment is proper." *Olson v. Pennzoil Co.*, 943 F.2d 881, 883 (8th Cir. 1991).

**IV. DISCUSSION**

Plaintiff brings suit pursuant to 42 U.S.C. § 1983[3] claiming that Defendants violated his Eighth Amendment constitutional right to be free from cruel and unusual punishment. Defendants base their motion for summary judgment on their entitlement to qualified immunity, or alternatively, on the merits of the Eighth Amendment claim. The Court will address the merits of the Eighth Amendment claim within the framework of the qualified immunity standard. "Government officials performing discretionary functions are shielded from liability for civil damages in § 1983 actions unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Foulks v. Cole County, Missouri*, 991 F.2d 454, 456 (8th Cir. 1993) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Eighth Circuit has articulated a two part inquiry in determining whether a defendant's actions, taken within the sphere of official responsibility, are protected by qualified immunity. *Ware v. Morrison*, 276 F.3d 385, 387 (8th Cir. 2002). "First we must inquire whether the facts alleged, when taken in the light most favorable to the party asserting the injury, show that the defendant officials violated a constitutional right. If we determine that the plaintiff has shown a violation of a constitutional right, we then must inquire whether the constitutional right was clearly established." *Id.*

The first requirement for overcoming Defendants' qualified immunity is that the Plaintiff assert the violation of a constitutionally protected right. *Id*; *see also Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007) ("In resolving questions of qualified immunity, courts are required to resolve a

---

[3] 42 U.S.C. § 1983 states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law[.]"

7

'threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?'" (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). Plaintiff alleges that his Eighth Amendment rights were violated in three ways: (1) Defendant Henneberry intentionally inflicted injury on him, and Defendants Holtzclaw and Friesz condoned this injury; (2) Defendant Friesz threatened him and caused emotional distress, and Defendant Holtzclaw knew of and failed to respond to this conduct; and (3) Defendants Henneberry and Holtzclaw denied proper medical care and allowed Plaintiff's condition to deteriorate.[4]

The Eighth Amendment to the United States Constitution forbids the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. The United States Supreme Court has recognized that this Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency . . . against which we must evaluate penal measures." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (internal citations and quotations omitted). "To prevail on an Eighth Amendment claim, an inmate must prove both an objective element, which asks whether the deprivation was sufficiently serious, and a subjective element, which asks whether the defendant officials acted with a sufficiently culpable state of mind." *Choate v. Lockhart*, 7 F.3d 1370, 1373 (8th Cir. 1993). In the context of a Section 1983 claim, the objective element requires a showing that the prison official's act or omission resulted in "the denial of 'the minimal

---

[4] Plaintiff raises the denial of standard medical care claim under Counts II and III, which are labeled as state law causes of action. However, to the extent the allegations in the Complaint raise federal constitutional issues, the Court will consider them. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (instructing that pro se complaints are to be construed liberally). Therefore, although the Court dismissed the negligence claims brought under state law, the Court will consider the denial of medical care allegation as a challenge under the Eighth Amendment.

8

civilized measure of life's necessities.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (*quoting Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). The subjective element requires a showing of "deliberate indifference." *Choate*, 7 F.3d at 1373-74. Deliberate indifference, in turn, requires the "unnecessary and wanton infliction of pain." *Id.* at 1374 (*quoting Givens v. Jones*, 900 F.2d 1229, 1232 (8th Cir. 1990) (internal quotation marks omitted)). Mere negligence and inadvertence are insufficient to satisfy the deliberate indifference requirement. *Id.*

A supervisor is only liable for an Eighth Amendment violation under Section 1983 if he or she "personally participated in or had direct responsibility for the alleged violations" or "actually knew of, and was deliberately indifferent to or tacitly authorized, the unconstitutional acts." *McDowell v. Jones*, 990 F.2d 433, 435 (1993).

### A. Intentional Infliction of Injury

Plaintiff alleges that Defendant Henneberry intentionally injured him in violation of the Eighth Amendment, and that Defendant Holtzclaw failed to respond to this situation. The Court finds that there is no genuine issue of material fact that would allow Plaintiff to survive summary judgment on this claim. "The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence of any significant injury." *Johnson v. Blaukat*, 453 F.3d 1108, 1112 (8th Cir. 2006) (*citing Hudson v. McMillian*, 503 U.S. 1, 9 (1992)). However, *de minimis* use of physical force is not forbidden by the Eighth Amendment, provided that it is not "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9-10 (*quoting Whitley v. Albers*, 475 U.S. 312, 327 (1986)). The Eighth Circuit has found no Eighth Amendment violation where a prison official intentionally threw a cup of liquid into a cell where a prisoner was confined to his bed by restraints, and the liquid made

9

contact with the prisoner's body. *Samuels v. Hawkins*, 157 F.3d 557, 558 (1998). Although the official's action was "unprofessional and inappropriate," it was certainly not malicious and sadistic. *Id.* If throwing liquid into the cell constituted force at all, it was merely *de minimis* and did not offend the Eighth Amendment. *Id.*

Here, the facts are even less severe than the facts in *Samuels*. Unlike in *Samuels*, where the official intentionally threw liquid at the restrained prisoner, Defendant Henneberry inadvertently tripped and spilled coffee on Plaintiff's cell door. Plaintiff was standing several feet away from the door, and while he later used his shirt to wipe the coffee off the door, there is no evidence that the coffee made contact with his face or skin. There is no evidence of intentional infliction of force. Even if the incident does qualify as "force," it is *de minimis* and does not rise to the level of serious, as required for the first element of a claim under the Eighth Amendment. *See Choate*, 7 F.3d at 1373. Defendant Henneberry did not impose unnecessary and wanton pain on Plaintiff, so she is entitled to summary judgment on this claim. Further, because Defendant Henneberry did not violate Plaintiff's constitutional rights, Defendant Holtzclaw cannot be liable on the basis of personal participation in or tacit authorization of an unconstitutional act. Therefore, Defendant Holtzclaw is also entitled to summary judgment on this claim *See McDowell*, 990F.2d at 435.

### B. Threats and Emotional Distress

Plaintiff also alleges that Defendant Friesz threatened him in response to Plaintiff's decision to file a report against Defendant Henneberry, causing fear and emotional distress. Plaintiff also claims that Defendant Holtzclaw condoned Defendant Friesz's alleged harassment. The Court finds that there is no genuine issue of material fact with respect to this issue and that

the Defendants are entitled to judgment as a matter of law. Although the parties disagree about the content of the interactions between Plaintiff and Defendant Friesz, this dispute does not relate to a material fact. Even if the account in Plaintiff's deposition is taken as true,[5] Defendant Friesz's statements do not rise to the level of an Eighth Amendment violation. "Verbal threats and name calling usually are not actionable under § 1983." *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993). Even where prison officials harass an inmate in order to dissuade him from filing a grievance, there is no Eighth Amendment violation where the inmate was not denied access to the grievance procedure. *Id*; *see also Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985) ("[Plaintiff] alleges that [defendant] verbally abused and threatened him for filing grievances. Verbal threats do not constitute a constitutional violation. Moreover, [plaintiff] does not allege that he was deprived access to the grievance procedures. Therefore, he fails to state a claim against [defendant].")

Here, it is undisputed that Plaintiff had access to the grievance procedure. He filed at least two Informal Resolution Request forms and two Offender Grievance forms in relation to the December 28, 2005 incident and his interactions with Defendant Friesz. Even if Defendant Friesz made the alleged threats this would not constitute a constitutional violation. Therefore, the alleged verbal threats by Defendant Friesz are not actionable under Section 1983. *See McDowell*, 990 F.2d at 434. Further, there is no evidence that Defendant Holtzclaw directly participated in or actually knew of the conversations between Plaintiff and Defendant Friesz. There is no genuine

---

[5] Plaintiff's complaint and deposition are not enough for him to meet his burden of setting forth affirmative evidence with specific facts showing that there is a genuine dispute on the issue. *See Anderson*, 477 U.S. at 249. "The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial." *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).

issue of material fact with respect to the claim that Defendant Friesz threatened Plaintiff and that Defendant Holtzclaw tolerated this conduct, and both Defendants are entitled to judgment as a matter of law on this claim.

### C. Denial of Proper Medical Care

Plaintiff's third claim is that Defendants Henneberry and Holtzclaw denied him proper medical care. The Court finds that there is no genuine issue of material fact and that Defendants are entitled to judgment as a matter of law on this claim. "Deliberate indifference to a prisoner's serious illness or injury states a cause of action under [Section] 1983[,]" *Estelle v. Gamble*, 429 U.S. 97, 105 (1976), where Plaintiff demonstrates "(1) that [he] suffered objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citing *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997)). An objectively serious medical need is "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Camberos v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995) (*quoting Johnson v. Busby*, 953 F.2d 349, 351 (8th Cir. 1991)). To satisfy the subjective requirement of deliberate indifference, Plaintiff must show that the "prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany*, 132 F.3d at 1239. Mere negligence or medical malpractice do not rise to the level of deliberate indifference. *Id.* Deliberate indifference may exist where prison officials intentionally deny or delay access to medical care, *id.* at 1239, but a delay in initial treatment does not constitute an Eighth Amendment violation unless officials ignored an "acute or escalating situation" or the delay adversely affected the plaintiff's prognosis, *Sherrer v. Stephens*,

50 F.3d 496, 496-97 (8th Cir. 1994).

In *Austin v. Craighead County Jail*, the plaintiff alleged that bare electrical wires in his cell touched his bed and made it explode, causing injury and loss of vision in his eye. 189 F. App'x 583, 584 (8th Cir. 2006). The plaintiff further complained that he was not examined by the jail physician until the next day and that he was not referred to an eye specialist. *Id.* The Eighth Circuit found no basis for reversal of the trial court's decision to dismiss the case because the plaintiff did not prove that he was denied adequate medical care. *Id.* The plaintiff saw the doctor both one day and twenty days after the initial injury. *Id.* The eye examinations were normal, and the doctor prescribed eye drops in an attempt to alleviate the reported symptoms. *Id.* The plaintiff saw a specialist after transfer to federal custody, and there was no evidence that he was harmed by the delay in seeing a specialist. *Id.*

Here, like in *Austin*, Plaintiff has not set forth affirmative evidence of specific facts sufficient to overcome summary judgment on his medical indifference claim. First, there is no evidence that Plaintiff sustained a serious eye injury at all. It is undisputed that Plaintiff was diagnosed with an eye infection on January 12, 2006, and that this ailment was improving by January 19, 2006. Plaintiff complained of vision problems, but had 20/20 vision on January 12, 2006 and February 8, 2006. He has not set forth facts showing that he had a serious medical problem after these dates. Plaintiff has not made a showing sufficient to support the serious medical need element of a deliberate indifference claim. Therefore, there can be no genuine issue as to any material fact because complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Celotex Corp. v. Citrate*, 477 U.S. 317, 322-23 (1986).

13

Even if Plaintiff's eye infection and vision problems were objectively serious, there was no deliberate indifference. There is no evidence that prison officials knew that the Plaintiff's eye condition created an excessive risk to his health and then failed to act on that knowledge. *See Dulany*, 132 F.3d at 1239. The coffee incident occurred on December 28, 2005, and Plaintiff saw a nurse the next day. While a delay in initial treatment may constitute deliberate indifference, *id.*, here there is no evidence of an "acute or escalating situation" or that the one-day delay adversely affected Plaintiff's prognosis, *see Sherrer*, 50 F.3d at 496-97. Indeed, the nurse who examined Plaintiff on December 29, 2006, did not report any problems with his eye or vision. A one-day delay in treatment for an eye infection or vision problems does not rise to the level of deliberate indifference where the delay did not harm the prisoner. *Austin*, 189 Fed. App'x at 584.

Further, Plaintiff received ongoing medical attention in relation to his eye. He was examined by nurses on January 12, February 2, February 8, February 12, February 14, and April 29, 2006. Additionally, Plaintiff saw a physician on January 12 and 19, 2006, and he was prescribed an antibiotic on the first of those visits. The treatment Plaintiff received exceeds the treatment in *Austin*, where the plaintiff was only seen by medical personnel twice. *Austin*, 189 Fed App'x at 584. The numerous nurse and doctor visits Plaintiff received show that Defendants Henneberry and Holtzclaw clearly did not knowingly disregard any medical condition Plaintiff suffered. Because Plaintiff has not satisfied his burden of showing that there is a genuine issue of material fact with respect to the existence of a serious medical condition to which Defendants were deliberately indifferent, Defendants Henneberry and Holtzclaw are entitled to summary judgment on the denial of medical care claim.

Because the Court finds that no constitutional violation occurred, it is unnecessary to

address the second prong of the qualified immunity analysis, whether the constitutional right was clearly established.

## V.  CONCLUSION

The Court concludes that Defendants Henneberry, Friesz, and Holtzclaw are entitled to Summary Judgment.  Plaintiff has failed to provide sufficient evidence to support a jury verdict in his favor on his Eighth Amendment infliction of injury, infliction of threats and emotional distress, and denial of medical care claims.  The evidence shows that Defendant Henneberry did not intentionally injure Plaintiff, that Defendant Friesz did not deny Plaintiff access to the grievance procedure through harassment and threats, that Defendant Holtzclaw did not participate in or authorize intentional injury, harassment, or threats to Plaintiff, and that Plaintiff did not have a serious eye condition.  Plaintiff's Eighth Amendment claims against Defendants is dismissed with prejudice.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants Henneberry, Friesz, and Holtzclaw's Motion for Summary Judgment [doc. #34] is **GRANTED.**

Dated this 4th Day of December, 2007.

_____
E. RICHARD WEBBER
UNITED STATES DISTRICT JUDGE